UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARC WOOD & TIMBERS, LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>RIVERWOOD FLOORING & PANELING, INC., et al.,<br><br>       Defendants. | Case No. 21-cv-04885-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

Before the Court is Defendants Riverwood Flooring & Paneling, Inc. and Keith Lacy's motion to dismiss for lack of personal jurisdiction, for which briefing is complete. *See* Dkt. Nos. 17 ("Mot."), 18 ("Opp."), and 29 ("Reply"). For the reasons detailed below, the Court GRANTS Defendants' motion to dismiss for lack of personal jurisdiction.

**I.     BACKGROUND**

Plaintiff Arc Wood & Timbers, LLC ("AW&T") and Defendant Riverwood Flooring & Paneling, Inc. ("Riverwood") are in the business of supplying and procuring lumber for high-end, custom residential and commercial buildings.[1] Plaintiff is a California limited liability company with its principal place of business in San Rafael, California. Plaintiff provides reclaimed and premium wood to the high-end, custom residential and commercial building market. Riverwood is a corporation organized and existing under the laws of the state of Georgia, with its principal place of business in Cairo, Georgia. Riverwood logs, mills, and supplies bald cypress lumber from

---

[1] The summary of facts is taken from the operative complaint and the affidavit of Plaintiff's principal, Lance Karnan, filed in opposition to the motion to dismiss. For purposes of determining whether the Court has personal jurisdiction over Defendants, the Court assumes Mr. Karnan's allegations are true. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

1   Georgia, Florida, or Alabama to lumber procurers like AW&T.  Keith Lacy is the president and

2   CEO of Riverwood.  From 2011 through 2020, Plaintiff and Riverwood entered into 71

3   agreements worth a total of approximately $2.3 million.

4         According to Mr. Karnan's affidavit, Mr. Lacy visited Plaintiff's facilities in San

5   Francisco, California in March 2013.[2]  During Mr. Lacy's trip, Mr. Karnan and Mr. Lacy visited a

6   high-end residential project in Woodside, California for which Riverwood had supplied over

7   $200,000 of sinker cypress lumber.  Mr. Karnan and Mr. Lacy also met with the architectural firm

8   that would later design the project underlying this dispute.

9         In 2016, the parties began discussing a construction project in Kauai, Hawaii that would

10  become known as the KR Project.  As part of these discussions, on September 9, 2016, Riverwood

11  sent a shipment of cypress lumber to Plaintiff for use as a sample.  The cypress lumber was later

12  incorporated in the KR Project and other projects for which Riverwood subsequently supplied

13  cypress to Plaintiff.

14        On July 31, 2018, Plaintiff and Riverwood entered into the Bald Cypress Log Purchase

15  Agreement ("Agreement"), in which Plaintiff agreed to a purchase price of $537,500 for 215

16  truckloads of bald cypress logs to produce approximately 430,000 board feet of milled bald

17  cypress lumber to complete the KR Project.[3]

18        Over time, the KR Project was beset with various complications, and the parties'

19  relationship broke down.  On June 25, 2021, Plaintiff brought suit against Defendants, alleging

20  breach of contract and fraud in the inducement because Defendants failed to deliver an outstanding

21  296,000 board feet under the Agreement while retaining Plaintiff's deposit, requiring Plaintiff to

22  obtain comparable lumber from another source.  Dkt. No. 1 ("Compl.").  Defendants move to

---

[2] In his declaration, Mr. Lacy indicates that this trip was a family vacation, and Plaintiff does not contend otherwise.  Dkt. No. 19-1 (Lacy Decl.) ¶¶ 13-18; Opp. at 4-5.

[3] While Plaintiff originally alleged that "[t]he contract on which this action is based was made in and was to be performed (i.e., the delivery of product to plaintiff by defendants) in the city of Novato, Marin County, California," Compl. ¶ 6, Plaintiff now disclaims this basis for jurisdiction. *See* Opp. at 2 n.1 ("While the samples of lumber for the KR Project were sent to California and many other projects included delivery to California, the allegation that contract performance included that the product was to be delivered to Plaintiff in Novato, California is inaccurate.").

United States District Court
Northern District of California

dismiss Plaintiff's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II.  LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Although the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," the court resolves factual disputes in the plaintiff's favor." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation marks omitted). When the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie showing of facts supporting personal jurisdiction to avoid dismissal. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001).

Due process limits a court's power to "render a valid personal judgment against a nonresident defendant." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Where a state authorizes "jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States," as does California, *see* Cal. Civ. Proc. Code § 410.10, federal courts must determine whether the exercise of jurisdiction over a defendant "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."). To comport with due process, a court may "exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)); *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by

interacting with other persons affiliated with the State." (internal quotations omitted)).

## III. DISCUSSION

A plaintiff may invoke either general or specific personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, i.e., comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11 (internal quotations, citations, and alterations omitted). To establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.*

The Ninth Circuit has held that the analysis under the first prong of the specific jurisdiction inquiry proceeds under either the purposeful availment test or the purposeful direction test, which courts have generally found to be distinct concepts. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). Under the purposeful availment test, which generally provides a more useful frame of analysis for contract claims, courts look to whether the defendant deliberately engaged in significant activities within the forum or created continuing obligations between itself and forum residents. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). Under the purposeful direction test, which is often the better approach for tort claims, courts look to whether the defendant has directed its actions at the forum state, even if those actions took place elsewhere. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). When both contract and tort claims are brought, both the "purposeful availment" and "purposeful direction" tests are relevant. *Glob. Commodities*, 972 F.3d at 1107. *Id.* "At bottom, both purposeful availment and purposeful direction ask whether defendants have

4

voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.'" *Id.* (quoting *Burger King*, 471 U.S. at 474-75).

Plaintiff contends the Court has specific jurisdiction over Defendants Riverwood and Mr. Lacy because (1) Riverwood directed its activities at California through its "decades-long" business relationship with Plaintiff; (2) Riverwood's CEO, Mr. Lacy, traveled to California in 2013 and met with Plaintiff, visited a construction project incorporating Riverwood's lumber, and met with an architectural firm who would later work on the KR Project, the project underlying this dispute; and (3) Riverwood allegedly sent a sample of cypress lumber to Plaintiff in California that was later used in the KR Project.[4]  Opp. at 7-10.

"As the Supreme Court has expressly cautioned, a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) (citing *Burger King*, 471 U.S. at 478).  Instead, courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant purposefully established minimum contacts within the forum.  *Id.* at 479; *see Glob. Commodities*, 972 F.3d at 1108 ("courts must evaluate the parties' entire course of dealing, not solely the particular contract or tortious conduct giving rise to the claim, when assessing whether a defendant has minimum contacts with a forum").  "In cases where [the Ninth Circuit has] held that a contract between a forum resident and a non-resident did not give rise to specific jurisdiction in the forum, [it has] done so because the business relationship between the parties was fleeting or its center of gravity lay elsewhere." *Id.* (citing *Boschetto*, 539 F.3d at 1017 (holding that a single eBay sale to a California resident did not give rise to personal jurisdiction there) and *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254-55 (9th Cir. 1980) (holding that a contract

---

[4] Plaintiff cursorily asserts that the Court should exercise general jurisdiction over Defendants but, "recognizing the high bar that is required to establish general jurisdiction, . . . focuses on arguing that this Court should exercise specific personal jurisdiction over Defendants." Opp. at 7 n.2. Based on the record before it, the Court concludes, consistent with Plaintiffs' tacit admission, that it does not have general personal jurisdiction over Defendants.

5

1  resulting from public bidding in Costa Rica did not give rise to personal jurisdiction in
2  California)).

3    The Court concludes that Plaintiff has not made a prima facie showing that Defendants "reach[ed] out beyond [Georgia]" to "create continuing relationships and obligations with citizens of [California]." *Burger King*, 471 U.S. at 473.  Although the parties together have conducted 71 transactions totaling $2.3 million over the course of a decade, there is no evidence or plausible allegation that Defendants have ever affirmatively reached out to Plaintiff in California to solicit business.  Further, there is no evidence or plausible allegation that Defendants have ever shipped lumber to California for their projects, as opposed to producing lumber for pickup in Georgia.  And to negotiate the underlying KR Project, Plaintiff engaged a local agent in Georgia for in-person negotiations with Georgia-based Mr. Lacy.  *Cf. Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287-88 (9th Cir. 1977) ("By participating in the contract negotiations in California, [defendant] purposefully availed itself of the privilege of carrying out activities in that state.").  Here, the "center of gravity" of the parties' business relationship does not lie in California.  *Glob. Commodities*, 972 F.3d at 1108.

Plaintiff asks the Court to analogize this case to the facts in *Global Commodities*, in which the Ninth Circuit found that the district court had specific jurisdiction.  However, Plaintiff's reliance on *Global Commodities* is misplaced.  In *Global Commodities*, the Ninth Circuit observed that:

> the goods [defendant] purchased from plaintiffs were graded according to American standards, and inspection certificates were issued in California . . . When difficulties arose concerning the two contracts at issue . . . , [defendant] induced [plaintiff] to continue doing business with it by acknowledging its ongoing obligations to make payments in California.  The promise was made *for the purpose of obtaining benefits from a California corporation*.

*Id.* (emphasis added).  By contrast, there is no evidence or plausible allegation that Defendants' contacts with California were ever made for the purpose of seeking California's protections or benefits.

Although Mr. Lacy admits that, while on a 2013 trip to California, he visited Plaintiff's office, a construction project incorporating Riverwood lumber, and an architectural firm that

6

would work on the KR Project, this falls far short of the type of facts that established specific jurisdiction in *Global Commodities*, where defendants' corporate officers traveled from Honduras to California, and while there "made the promises central to this dispute." *Id.* at 1110 (noting that the corporate officers "met with [plaintiff's] employees in the forum state to negotiate the commodities transactions at issue in the suit[,] . . . falsely assured [plaintiff] that [defendant] had extended its importation permits[,] . . . [and] had previously traveled to California on multiple occasions as part of the ongoing business relationship"). By contrast, there is no evidence or plausible allegation suggesting that Mr. Lacy traveled to California for the purpose of negotiating about the project underlying this dispute or as part of the parties' ongoing business, and his explanation that he was on vacation is unrebutted.

Plaintiff argues that Defendants' shipment of lumber samples to California in 2016 evidences the Defendants' solicitation for the business of the California-based Plaintiff. Although Defendants dispute that they sent the samples to Plaintiff in California,[5] even resolving genuine factual disputes in Plaintiff's favor (as the Court must in this posture), the Court finds that the shipment of samples to California does not amount to purposeful availment sufficient to support specific jurisdiction in California. It is undisputed that the samples sent were considered for use in a project located in Hawaii, not California. And taken together with the other California contacts analyzed above, the samples do not indicate that defendants "deliberately targeted the California market." *Taubler v. Giraud*, 655 F.2d 991, 994 (9th Cir. 1981). In *Taubler*, which Plaintiff cites in support of its argument, the Ninth Circuit found the exercise of specific jurisdiction proper as to a defendant with California contacts much broader than the shipment of samples to the state. The *Taubler* court's decision was based upon alleged contact with California that included:

> [defendant's] visits and promotional activity [in California] prior to the contract; entering into a contract to sell wine for California distribution; letters, telexes, telegrams, and telephone calls to [plaintiff] in California; flying [plaintiff] from California to meet them in New York; shipping samples to California; paying customs penalties incurred there; designating [plaintiff], and later [third party],

---

[5] Defendants contend that the samples were picked up from Defendants' sawmill in Georgia. Reply at 7.

>as licensee for fair-trade benefits; shipping one order to California, FOB France; obtaining payment from California; conspiring with [third party] to displace [plaintiff] in the California market; breaching the contract; and discriminatory pricing.

*Id.* at 994. The Ninth Circuit observed that "[m]any of these contacts would be insignificant if viewed alone," but concluded that "[v]iewed in their totality, . . . they indicate that the [defendants] deliberately targeted the California market." Such a finding is not warranted here.

Viewing Defendants' contacts with California in their totality, the Court concludes that Plaintiff has not made a prima facie showing of facts supporting personal jurisdiction. Because this failure alone means that Plaintiff has not established specific personal jurisdiction, the Court need not address the remaining factors.[6]

//
//
//
//
//
//
//
//
//
//
//
//

---

[6] Even if the Court were to find facts sufficiently establishing the first prong of the specific jurisdiction inquiry, Plaintiffs have not alleged facts sufficient to establish the second prong, which requires that plaintiff's claims arise out of or relate to the defendant's contacts with the forum. *Schwarzenegger*, 374 F.3d at 802. Although the parties dispute whether the Court should apply the "but-for" approach or the (possibly broader) "arise out of or relate to the defendant's contacts with the forum" standard, Plaintiff has not shown under either test how a contract for sourcing lumber from Georgia for a project in Hawaii is sufficiently related to Defendants' "negotiating and entering into contracts" with California-based Plaintiff. And there is no evidence or plausible allegation that performance of the contract was to take place in California. *See supra* note 3, at 2.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction. In light of the record discussed above, the Court has significant doubts as to whether Plaintiff can amend its Complaint, consistent with its Rule 11 obligations, to allege facts sufficient to make a prima facie showing supporting personal jurisdiction in this District.[7] However, because the Court cannot conclude that amendment necessarily would be futile, it dismisses the complaint with leave to amend. Any amended complaint must be filed within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 12/6/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[7] By contrast, based on the record presented, it appears beyond dispute that this case could have been brought in the Middle District of Georgia, where the Defendants reside, the key discussions appear to have taken place, and some if not all of the logs at issue were prepared and are being stored. If there is any further litigation in this Court in this matter, Defendants should address in the alternative whether transfer of the case to the Middle District of Georgia would be appropriate under 28 U.S.C. § 1404.

9